# UNITED STATES DISTRICT COURT
## for the SOUTHERN DISTRICT OF INDIANA,
### INDIANAPOLIS DIVISION

| | |
|---|---|
| **MARK McCLESKEY, Trustee, and** ) | |
| **INDIANA STATE COUNCIL OF** ) | |
| **PLASTERERS AND CEMENT MASONS** ) | |
| **HEALTH AND WELFARE AND** ) | |
| **PENSION FUNDS,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| *vs.* ) | **CAUSE NO.  1:11-cv-791-JMS-DKL** |
| ) | |
| **WALTER GIANINO, d/b/a Gianino** ) | |
| **Plastering,** ) | |
| ) | |
| **Defendant.** ) | |

### REPORT AND RECOMMENDATION

**Plaintiffs'** *Application for Order of Judgment in Sum Certain* **[doc. 17]**

This Cause is before the Court on Plaintiffs' motion for a final judgment in the amount of $247,312.33 [doc. 17].  In response, Defendant asked for an evidentiary hearing and an opportunity to conduct discovery.  [Doc. 18.]  The District Judge granted Defendant's request for a hearing and referred Plaintiffs' motion to this Magistrate Judge to conduct a hearing and prepare a Report and Recommendation thereon.  [Doc. 21.] Defendant was permitted to and did conduct discovery to prepare for the hearing.  [Doc. 24.] An evidentiary hearing was held on April 18, 2012.  Having heard the evidence and considered the parties' arguments and submissions as reported herein, this Magistrate Judge recommends that Plaintiffs' motion be granted and that judgment be entered in the

1

amount of $196,940.73 for the reasons stated in the following recommended findings and conclusions.

1.    Because Defendant failed to plead or otherwise defend within the time prescribed, the Clerk of Court entered Defendant's default [doc. 11]. Fed. R. Civ. P. 55(a). While the entry of default does not establish liability *per se*, Defendant is deemed to have admitted the Complaint's well-pleaded facts respecting liability. Defendant is not deemed to have admitted the Complaint's factual allegations respecting damages and may fully litigate the issue of damages. Fed. R. Civ. P. 8(b)(6); *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004); *United States v. Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989).

2.    Plaintiffs are **(1)** the Indiana State Council of Plasterers and Cement Masons Health and Welfare Fund, **(2)** the Indiana State Council of Plasterers and Cement Masons Pension Fund, and **(3)** Mark McCleskey, a trustee of both funds (collectively, the "Funds"). The Funds were established by, and are maintained and administered according to, **(1)** collective bargaining agreements ("CBAs") between the Operative Plasterers and Cement Masons International Association of the United States and Canada ("OPCMIA"), its affiliated Locals, and employer associations, and **(2)** each Fund's *Agreement and Declaration of Trust*. The National Labor Relations Act, 29 U.S.C. § 151, *et seq.*; the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002, *et seq.*; and other federal and state laws apply to the Funds. Complaint [doc. 1] ¶ 3. The Funds are multi-employer plans.

2

**3.** According to the Complaint, Defendant is "WALTER GIANINO d/b/a GIANINO PLASTERING" (referred to herein as "Gianino" and by neutral pronoun).[1] Gianino is an employer engaged in an industry that affects commerce, namely performing plastering services.

---

[1] The Complaint alleges that "WALTER GIANINO d/b/a GIANINO PLASTERING" "is an Indiana corporation and is doing business within this Court's jurisdiction." Complaint ¶ 4. Although Defendant's default means that the well-pleaded allegations of the Complaint are deemed admitted, the Court notes that, in 1997, "Gianino Plastering" was registered in Missouri as a fictitious entity name by Walter C. Gianino, individually, as owner. *Registration of Fictitious Name, No. X00327917*, Missouri Secretary of State (Sept. 24, 1997), http://www.sos.mo.gov/BusinessEntity/soskb/Corp.asp?1063490 (follow "Filed Documents" hyperlink, then follow Adobe document hyperlink for "Fictitious Creation"). On this 1997 *Registration*, Mr. Gianino wrote as his address the same St. Louis, Missouri address at which personal service of the 2011 Complaint herein was effected. *Return of Service* (July 01, 2011) [doc. 7-1, Page ID #15]. The fictitious-name registration for Gianino Plastering expired as of October 17, 2009 due to Mr. Gianino's failure to renew it. *Notice of Expiration for a Fictitious Name Registration, Gianino Plastering*, Missouri Secretary of State (Oct. 17, 2009), *id.* (follow "Filed documents" hyperlink, then follow Adobe document hyperlink for "Fictitious Expired").

On July 23, 2011 — twenty-two days after Mr. Gianino was personally served with the Complaint in this suit — the Missouri Secretary of State issued a *Certificate of Registration* for "Gianino Plastering & Son Co LLc" upon Mr. Gianino's filing of *Articles of Organization* for the entity under the Missouri Limited Liability Company Act. Mr. Gianino identified himself as the entity's registered agent and sole organizer and gave the same St. Louis address as for his earlier fictitious-name registration and at which he was served. *Certificate of Registration* and *Articles of Organization*, File No. LC1157776, Missouri Secretary of State (July 23, 2011), https://www.sos.mo.gov/BusinessEntity/soskb/Corp.asp?3217472 (follow "Filed Documents" link, then follow Adobe document hyperlink).

An online search of the Indiana Secretary of State's business-entity-name database produced no results for "Gianino Plastering" or "Gianino." Indiana Secretary of State, Business Services Online, https://secure.in.gov/sos/online_corps/name_search.aspx (last searched on July 24, 2012).

**4.** The Funds sued Gianino for failing to make contributions to the Funds on behalf of its employees from January 1, 2006 to the present as was required by the CBAs, by each Fund's *Agreement and Declaration of Trust* that were incorporated into the CBAs, and by ERISA. Soon after Gianino's default was entered, the Funds moved for, and the Court issued, an order commanding Gianino to produce specified records in order to permit the Funds to conduct an audit to determine its delinquent contributions and to calculate the Funds' damages [docs. 12 and 13]. Gianino did not comply with the Court's order except that Mr. Gianino produced a small amount of check stubs to the Funds' auditor that were insufficient for conducting an audit. The Funds eventually obtained Gianino's bank statements and cancelled checks through a subpoena served on its bank. The Funds conducted their audit of Gianino's contributions based primarily on those subpoenaed records, the operative agreements, and information supplied by the Local, such as employee pay scales.

The Funds moved for a default judgment under Fed. R. Civ. P. 55(b). *Application for Order of Judgment in Sum Certain* [doc. 17]. As noted, Gianino opposed the motion and moved for a hearing on the Funds' damages. *Defendant's Motion for Hearing and Response* [doc. 18]. In instances of default, neither a plaintiff nor a defaulted defendant has a constitutional, statutory, or rule-based right to trial on the issue of damages. It is within a court's discretion to determine the type of hearing that is appropriate in the circumstances of a particular case. Fed. R. Civ. P. 55(b)(2); *Olcott v. Delaware Flood Co.*, 327

F.3d 1115, (10th Cir.), *cert. denied*, 540 U.S. 1089 (2003); *Matter of Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992) *Adriana International Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990), *cert. denied*, 498 U.S. 1109 (1991); Wright, Miller, & Kane, *Federal Practice and Procedure*: *Civil 3d* § 2688, p. 69 (1998); Moore's Federal Practice § 55.32[2][e], p. 55-49 (3rd ed. 2011). The District Judge granted Gianino's motion for a hearing on damages and designated this Magistrate Judge to conduct the hearing and issue a report and recommendation regarding the proper disposition of the Funds' motion for judgment. *Order of Referral* [doc. 21].

5. A hearing was held on April 18, 2012 [doc. 25]. An electronic sound recording of the hearing was made, which was transcribed [doc. 30]. The Funds appeared by counsel, Donald D. Schwartz, and Gianino appeared by counsel, Ryan M. Hurley. The Funds introduced the testimony of **(1) John Davis**, Business Manager of Plasterers Local No. 3 in St. Louis, Missouri, an affiliate of the OPCMIA,; **(2) Steven Wagner**, an auditor employed by Richard J. Wolf and Company, Inc. which performed the audit of Gianino for the Funds; and **(3) Melvin Cox**, Director of Taft-Hartley Administration for HealthSCOPE Benefits, Inc., a third-party administrator of self-funded Taft-Hartley plans (multi-employer, multi-bargaining-unit plans) and the administrator of the Funds in this case. The Funds also introduced nine documentary exhibits. Gianino introduced two documentary exhibits, which were duplicates of documents included in the Funds' exhibits, and introduced no testimony.

6. In their motion, the Funds requested and, at the hearing, they sought to prove,

damages consisting of **(1)** Gianino's unpaid contributions to the Funds for the period from December 1, 2007 through September 30, 2011, the period covered by their audit (the "audit period"); **(2)** 10% liquidated damages; and **(3)** the costs of conducting the audit.

7.   Gianino was a signatory to three successive versions of the CBA between Plasterers Local No. 3 and the Walls and Ceilings Contractors Association of Greater St. Louis. *CBA July 1, 1999–June 30, 2004*, p. 30 (Plaintiffs' Exhibit D); *CBA July 1, 2004–June 30, 2009*, p. 30 (Plaintiffs' Exhibit E); *CBA July 1, 2009-June 30, 2014*, p. 28 (Plaintiffs' Exhibit F); *Transcript* [doc. 30] at 12-15. The CBAs had virtually identical relevant provisions. The CBAs had the following provisions (citations are to the current version, *CBA July 1, 2009–June 30, 2014*, Plaintiff's Exhibit F):

**a.**   The CBA "covers" specified cities and counties in the State of Missouri. Art. 2, § 1.

**b.**   Contractors must contract for all lath and plaster work "listed in section of specifications titled 'Lath and Plaster' and other Specialty Items covered herein." Neither employers nor any of their subcontractors may contract or subcontract any on-site construction work within the jurisdiction of Plasterers Local No. 3 to any other person which is not a party to a current CBA with the Local. Art. 1, § 1.

**c.**   Gianino agreed to pay health-and-welfare and pension contributions to the Funds in the manner specified by the trustees of the Funds or under the terms of the CBA. Art. 3, § 5a.

6

**d.** In making such contributions, Gianino was required to complete such reporting forms as furnished to it by the Funds or the union. *Id.*

**e.** Gianino agreed to pay into the Funds specified amounts per hour for each employee (subject to annual enhancements through later-determined allocations of specified annual wage-rate increases, Art. 5, § 2):

> It is mutually agreed and understood that all employers . . . will pay, in addition to the hourly wage herein specified, the sum of [amount] per hour for each employee into Indiana State Council of Plasterers' and Cement Masons' ["Health and Welfare" and "Pension"] Fund . . . .

Art. 5, §§ 3 and 4. The health-and-welfare-fund and pension-fund contribution checks were required to be made payable to "P. & C.M. H. & W. FUND" and mailed to the Funds in Indianapolis, Indiana. *Id.*

**f.** In addition to making health-and-welfare-fund and pension-fund contributions, the CBA required Gianino to **(i)** withhold union dues and assessments from employees' wages (upon written authorization of the employee) and separately pay those amounts to Plasterers Union Local No. 3, Art. 5 § 5; **(ii)** pay, from its own funds and from withheld employees' wages, specified amounts per work hour for apprentice training, payable to the Local No. 3 Apprentice Committee and mailed to the Plasterers Local No. 3, Art 5, § 9; **(iii)** pay, from its own funds and from withheld employees' wages on the employees' written authorization, specified amounts per work hour for promotion of the greater use of lath and plaster, payable to the Plaster Bureau, Inc. (or the Plaster Promotional Bureau), Art. 10, § 1.

**8.**  On October 11, 2000, defendant Walter C. Gianino executed, as "President," the
"Indiana State Council of Plasterers' and Cement Masons' Health and Welfare Fund and
Pension Fund Assent of Participation Agreement."   Complaint, Exhibit A [doc. 1-1];
Plaintiffs' Exhibit A ("*Assent of Participation Agreement*"); *Transcript* at 10-11.  By this *Assent
of Participation Agreement*, Gianino agreed "to accept, to be bound by, and to comply with"
the terms and provisions of **(1)** the CBA requiring contributions to the Funds and **(2)** the
agreement and declaration of trust that established and governed each Fund.  If Gianino
performed work outside the territorial jurisdiction of Local No. 3, but within the territorial
jurisdiction of any other Local whose CBA requires contributions to the Funds, then
Gianino was required to continue making contributions to the Funds according to the
terms of the CBA of that other Local, without the necessity of signing the other CBA.  The
*Assent to Participation Agreement* also required Gianino to submit monthly reports of hours
worked together with remittance of contributions.  If a contribution was nine days past
due, then liquidated damages of an additional 10% of the total health-and-welfare and
pension contribution due was assessed.  After thirty days, an additional 10% was assessed.
Gianino's contributions were to continue for so long as it was bound to observe the CBAs,
including all amendments, extensions, renewals, or successor agreements.

**9.**  During the audit period, each fund had in effect an agreement and declaration
of trust that governed the fund: *Restated Agreement and Declaration of Trust, Indiana State
Council of Plasterers' and Cement Masons' Pension Fund* (October 15, 1992; amended June

1997; amended August 28, 2003), Plaintiffs' Exhibit B ("*Pension A. & D. T.*"); *Agreement and Declaration of Trust for the Indiana State Council of Plasterers' and Cement Masons' Health and Welfare Fund As Restated July 1, 1992* (October 15, 1992; amended August 28, 2003), Plaintiffs' Exhibit C ("*Health and Welfare A. & D. T.*"); *Transcript* at 11-12.  By its execution of the *Assent of Participation Agreement*, Gianino agreed to be bound by and to comply with the following terms and provisions:

    **a.**  Employers shall make the contributions to the funds in the amounts that are provided in their relevant CBAs and/or other agreements.  *Pension A. & D. T.*, Art. III, § 1; *Health and Welfare A. & D. T.*, Art. III, §§ 1, 2, 4.

    **b.**  Employers shall provide contribution reports as required by the trustees of the funds and furnish, on demand, such payroll records and data regarding employees that the fund trustees require in connection with the administration of the funds.  The fund trustees have the right to examine employers' records regarding employees benefitting from the funds whenever the trustees deem such examination necessary or advisable in connection with the administration of the funds.  *Pension A. & D. T.*, Art. III, § 5; *Health and Welfare A. & D. T.*, Art. III, §§ 2, 3.

    **c.**  Seven days (*Pension A. & D. T.*) or nine days (*Health and Welfare A. & D. T.*) after a contribution is due and unpaid, liquidated damages of 10% of the unpaid contribution are assessed.  Thirty days after the due date, an additional 10% of the unpaid contribution is assessed as liquidated damages.  *Pension A. & D. T.*, Art. III, § 4; *Health and Welfare A. & D. T.*, Art. III, § 6.

**d.**  If an employer is found liable for delinquent contributions, it shall be obligated to pay all auditing fees and other costs incurred by the trustees for such action.  *Pension A. & D. T.*, Art. III, § 5; *Health and Welfare A. & D. T.*, Art. III, § 3.

**10.**  John Davis, Business Agent for Plasterers Local No. 3, testified that the CBAs cover all aspects of plastering work, which is a generic term for numerous skills such as interior and exterior plastering, renovations, fireproofing, intermeshing, castings, and Venetian plastering.  *Transcript* at 21.  The term also includes work involving EIFS, exterior insulation finish systems, a synthetic exterior stucco.  *Id.* at 22.

**11.**  ERISA requires employers that contribute to multi-employer plans, such as the Funds, to create and maintain accurate, contemporaneous, and reliable records of employee hours so as to allow calculation of contributions that are due.  29 U.S.C. § 1059(a)(1).

**12.**  Defendant Walter Gianino and his employees Curt Gianino and James Gildenhaus have been members of Plasterers Local No. 3 since about the year 2000 and they have done plastering work.  *Transcript* at 17-18, 21-22, 42.  Within the audit period, Gianino performed EIFS plastering work in the city of Normandy in St. Louis County, Missouri and in the city of Arnold in Jefferson County, Missouri.  *Transcript* at 19, 22-23. Both locations are within the territorial jurisdiction of the CBAs between Plasterers Local No. 3 and Gianino.  *CBA July 1, 2009–June 30, 2014*, Art. 2, § 1, Plaintiff's Exhibit F; *Transcript* at 24.

**13.**  In 2011, the Funds retained the firm of Richard J. Wolf & Co., Inc. to perform an audit of Gianino's records to determine the amount of any delinquent contributions. Steven Wagner, an auditor with the firm, performed the audit.  He has performed about 2,000 such audits over almost ten years.  His standard auditing procedure is to meet with the subjects of the audits, review the records that they provide, and complete the audits based on those records.

**14.**  Mr. Wagner met with defendant Walter Gianino on September 16, 2011 and requested records in order to perform the audit.  *Transcript* at 42.  Mr. Gianino did not provide any records other than a small amount of check stubs which were inadequate to complete the audit; he provided no time cards or job reports.  *Id.* at 28, 37, 39, 42.  In response to Mr. Wagner's request for additional records, Mr. Gianino stated that he would supply the requested records, but he did not.  *Id.* at 42.

**15.**  Pursuant to a subpoena served by the  Funds on Gianino's bank, copies of Gianino's bank statements and cancelled checks were obtained.  Plaintiffs' Exhibit I.  Mr. Wagner completed his audit using these records primarily and the small amount of check stubs that Mr. Gianino produced.

**16.**  Mr. Wagner's methodology for calculating Gianino's delinquent contributions was reasonable and sound.  Taking each check written by Gianino to one of its employees

as net pay, Mr. Wagner multiplied the check amount by $1.4^2$ in order to produce gross pay. He then divided each gross pay amount by the hourly pay scale that the employee was designated to be paid according to the applicable CBA, in order to arrive at the number of hours the employee worked.  Multiplying each employee's number of hours worked by the schedule of per-hour amounts that Gianino was required to pay (from its own funds or from withheld wages) as fringe-benefit contributions and other assessments, Mr. Wagner arrived at the total amount of Gianino's unpaid Funds contributions and other payments. *Transcript* at 28-29, 31, 32, 33.  The pay scales and annual schedules of per-work-hour amounts that Gianino was required to pay were determined from the applicable CBAs and/or were supplied by the Local.  *Id.* at 32-33, 34, 35.

**17.**  Melvin Cox, Director of Taft-Hartley Administration for HealthSCOPE Benefits, Inc., a third-party administrator of self-funded Taft-Hartley plans (multi-employer, multi-bargaining-unit plans) and the administrator of the Funds in this case, testified at the hearing.  HealthSCOPE collected plan contributions and kept track of contributions by Gianino to the Funds.  Mr. Cox authenticated and explained a report produced in the ordinary course of HealthSCOPE's business that showed contributions by Gianino during the audit period.  *Transcript* at 44-47; Plaintiffs' Exhibit H.  The report shows that, during the audit period, Gianino made only four contributions to the Funds:  in May 2010, it paid

---

[2] Mr. Wagner testified that he applied the 1.4 multiplier as a conservative number to "gross up" the net pay in the absence of any 1099 forms, W-2 forms, or any payroll tax information supplied by Gianino.  *Transcript* at 29, 33.

$675 to the pension fund and $641 to the health-and-welfare fund for Curt Gianino and the same amounts for James Gildenhaus, representing 100 hours of work by each during that month. *Id.*

**18.** The December 13, 2011 audit, Plaintiffs' Exhibit G, shows that Gianino failed to make contributions and payments in the total amount of $200,640.78, consisting of the following components:

[continued on next page]

| FUND | AMOUNT |
|---|---|
| WELFARE | $84,219.09 |
| PENSION | 93,431.57 |
| APPR[3] | 4,349.57 |
| BETTERMENT[4] | 1,926.64 |
| POL ACT FUND[5] | 670.71 |
| METRO B[6] | 6,555.92 |
| UNION DUES[7] | 6,267.42 |
| INT'L DUES[7] | 3,219.86 |
| | $200,640.78 |

*Richard J. Wolf and Co., Inc. Audit* (December 13, 2011), Plaintiffs' Exhibit G.  These amounts

are the delinquent contributions and payments due on 13, 412 hours of work by employees

---

[3] Presumably, this abbreviation refers to the payments to be made to Local No. 3's Apprentice Committee or Apprenticeship and Journeyman Training Fund for training and/or drug testing.  *CBA July 1, 2009–June 30, 2014*, Art. 3, § 5a; Art. 5, §§ 2, 9; Art. 13.

[4] Presumably, this abbreviation refers to the payments to be made to the Plaster Bureau, Inc. (or the Plaster Promotional Bureau) to promote greater use of lath and plaster.  *CBA July 1, 2009–June 30, 2014*, Art. 10, § 1.

[5] Presumably, a political-action fund, perhaps one of the other "assessments," in addition to union dues, that employers are required to withhold from wages and remit to the Local (see note 7).  *CBA July 1, 2009–June 30, 2014*, Art. 5 § 5.

[6] This fund was not identified.

[7] The CBAs provide that employers shall withhold "dues and assessments . . . on the basis of the amount specified by the Union upon written authorization of the employee."  *CBA July 1, 2009–June 30, 2014*, Art. 5, § 5.  The withholding checks are to be made payable to and are to be mailed to Plasterers Union Local No. 3, together with monthly time reports.  *Id.*  "Payment for each category shall be in a separate check."  *Id.*

Curt Gianino and James Gildenhaus.  The audit took into account the May 2010 contributions by Gianino.

The audit also showed delinquent contributions and payments in the amount of $22,802.25 for 1,378.50 hours of work by employees Andre Borreli, Ron Duff, and Danny Giger,[8] but the Funds withdrew their claim for these amounts at the hearing.  *Transcript* at 36.  The audit amounts representing these withdrawn claims were subtracted from the totals to arrive at the above amounts for employees Gianino and Gildenhaus.

**19.**  The Funds were charged $1,525 by Richard J. Wolf and Co., Inc. for performing the audit.  Plaintiffs' Exhibit G, p. 1.

**20.**  To the delinquent contributions and payments ($200,640.78), Mr. Wagner added 10% as liquidated damages ($20,064.78) and added the cost of the audit ($1,525) to arrive at a final audited amount of $222,229.86.  Plaintiffs' Exhibit G.  It is this total that the Funds requested in their post-hearing proposed findings and conclusions.  *Plaintiffs' Proposed Findings of Fact and Conclusions of Law* [doc. 28] ("*Plaintiffs' Findings and Conclusions*"), Findings of Fact ¶ 26, Conclusions of Law ¶ 25.  In its proposed findings and conclusions, Gianino contended that the Funds' request for judgment should be denied because its

---

[8] The audit is in two parts.  The first calculates "additional hours" for employees Curt Gianino and James Gildenhaus.  The second calculates "unreported hours" for employees Andre Borreli, Ron Duff, and Danny Giger.  The difference apparently is the fact that Gianino reported and contributed for at least some hours for Curt Gianino and James Gildenhaus.

requested $222,229.86 damages figure was not presented or explained at the hearing or in the Funds' proposed findings and conclusions. *Defendant's Proposed Findings of Fact and Conclusions of Law* [doc. 27], Conclusions of Law ¶ 10. While it is true that the Funds' final damages claim of $222,229.86 was not mentioned during the hearing and does not appear in the audit, that was because, at the hearing, the Funds withdrew their claim for the "unreported hours" part of the audit's calculation of delinquent contributions and payments. All of the constituent elements of the Funds' final claim were included in the audit and the total amount was a matter of mere calcuation. In addition, the Funds did, in fact, explain the elements of their total damages claim in their proposed findings and conclusions. *Plaintiffs' Findings and Conclusions*, Findings of Fact ¶ 26.

**21.** Gianino raises only two challenges to the audit results. First, there is no evidence that the work hours shown by Gianino's cancelled checks were for plastering work and, second, that there is no evidence that those work hours were performed within the territorial jurisdiction defined in the CBAs. The only evidence that Gianino introduced at the hearing were two cancelled checks, Defendant's Exhibits 1 and 2, that were duplicates of checks that the Funds procured *via* their subpoena and that were considered in the audit. Gianino introduced no evidence and made no suggestion that any of Curt Gianino's or James Gildenhaus' work hours shown in the audit represented non-plastering work or were performed outside the CBA territory, or that these, or any other Gianino employee, ever performed non-plastering work or work outside the CBA territory.

**22.**   The CBAs provide that "all employers . . . will pay, in addition to the hourly wage herein specified, the sum of six dollars and forty-one cents ($6.41)[9] per hour for each employee" into the Fund's health-and-welfare and pension funds.   *CBA July 1, 2009–June 30, 2014*, Art. 5, § 3.   This language is straightforward and plain.   There is no condition here that contributions are owed only for the hours that employees spend performing plastering work.   Evidence at the hearing showed that Curt Gianino and James Gildenhaus were members of the bargaining unit during the audit period and that they performed plastering work during the audit period.   Gianino presented no evidence or assertion that these employees performed any other work.   Gianino has shown no basis for interpreting the CBAs to require fund contributions for only hours spent performing plastering work.   According to the applicable agreements and governing law, Gianino owed contributions to the Funds for each hour worked by its bargaining-unit employees, regardless of whether the work was plastering.   *McCleskey v. DLF Construction, Inc.*, ___ F.3d ___, 2012 WL 2989250 (7th Cir., July 23, 2012).

Even if Gianino were required to make fund contributions only for plastering work, it has failed to overcome the presumption in favor of the correctness of the audit, as explained below.

**23.**   The CBAs provides that "This Agreement covers the following cities and

---

[9] [Court's note:]  The dollar amount changes annually according to the raises established in the CBAs.

counties in the State of Missouri: city of St. Louis, St. Louis County, St. Charles, Crawford, Dent, Franklin, Gasconcade, Iron, Lincoln, Madison, Phelps, Pike, Pulaski, Rails, Reynolds, St. Francois, Ste. Genevieve, Shannon, Texas, Warren and Washington, Montgomery and Jefferson." *CBA July 1, 2009–June 30, 2014*, Art. 2, § 1.  The CBAs further provide that, if employees are hired to work "outside the jurisdiction covered by this Agreement in areas, which are not covered, by any collective bargaining agreement, the wages and conditions contained in this Agreement shall apply." *Id.* Art. 2, § 2.  The requirement for employers to make per-hour contributions to the health-and-welfare and pension funds are contained within the CBA's "Wages and Working Conditions" Article.  *Id.*, Art. 5.  Thus, contributions are due if work is performed in territories not covered by another CBA. Further, the *Assent to Participation Agreement* provides that, if an employer performs work outside the territorial jurisdiction of Local No. 3, but within the territorial jurisdiction of any other Local whose CBA requires contributions to the Funds, then the employer shall continue making contributions to the Funds according to the terms of the CBA of that other Local, without the necessity of signing the other CBA.

Gianino provided no evidence, or even suggestion, that any work hours shown by the audit were performed outside the territorial jurisdiction of the applicable CBAs and within the territorial jurisdiction of another Local with a CBA requiring either no fund contributions or contributions to different health-and-welfare and pension funds.

**24.**  Once a pension or welfare fund presents a reasonable audit report and

18

establishes the absence of employer records contradicting the report, the burden shifts to the employer to show a genuine issue of material fact regarding the accuracy of the audit. *Laborers' Pension Fund v. RES Environmental Services, Inc.*, 377 F.3d 735, 738-39 (7th Cir. 2004).

> [O]nce a pension or welfare fund shows that an employer's records are deficient and produces an apparently sound accounting suggesting that money is owed, the employer could be obliged to explain why its payments to the funds are nonetheless proper.  If the explanation appears to be sufficient, then the fund must demonstrate at trial its entitlement to additional payment.  Otherwise, in the absence of an explanation by the employer, the fund would prevail on summary judgment.

*Id.* at 739, quoting *Chicago Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co.*, 347 F.3d 262, 264-65 (7th Cir. 2003).

25.    There was no evidence adduced at the hearing that Gianino, Curt Gianino, or James Gildenhaus performed any work outside the territorial jurisdiction of the CBAs during the audit period.  Rather, the Funds showed that Gianino failed to keep and/or produce adequate records from which contributions could be calculated as is required by the CBAs, each fund's *Agreement and Declaration of Trust*, and ERISA.  Through Mr. Davis' testimony that he observed Gianino performing plastering work within the CBAs' territorial jurisdiction during the audit period, the Funds showed that Gianino failed to make at least some required contributions.  Finally, the Funds presented a reasonable and reliable audit showing a reasonable basis for believing that Gianino has failed to make required contributions during the audit period.  Thus, the burden shifted to Gianino to

come forward with evidence showing a genuine issue of material fact regarding the accuracy of the audit and to explain why it owes no additional contributions to the Funds.

Gianino failed to present any evidence that it performed any of the work covered by the audit outside the territorial jurisdiction of the applicable CBAs and under circumstances where contributions still were not owed. It would have been an easy matter for Gianino at least to have presented the affidavits of Walter Gianino, Curt Gianino, and/or James Gildenhaus stating that any of the hours included in the audit were performed outside the CBAs' territory and under circumstances where contributions were not owed. If it had, the burden might have shifted back to the Funds. Even when given an opportunity during his meeting with the Funds' auditor, there is no indication that Walter Gianino asserted that any of the work performed during the audit period was non-plastering or extra-territorial work. *Transcript* at 41-42. It is reasonable and fair to construe the absence of such an assertion when one normally would be expected as further support for the finding that Gianino has not met its burden to show an issue with the audit's accuracy.

Gianino has failed to overcome the presumed accuracy of the audit regarding the amount of its delinquent contributions.

**24.** Although Gianino's challenges to the accuracy of the audit are rejected, the total amount of delinquent contributions shown by the audit are not awardable. The plaintiffs

in this suit are the health-and-welfare and pension funds maintained by the Indiana State Council of Plasterers and Cement Masons, and Mark McCleskey, a trustee of those funds. It was into these funds that the CBAs required Gianino to pay its health-and-welfare and pension contributions. The Complaint alleged, and the evidence and claims at the hearing asserted, only a failure by Gianino to make its required health-and-welfare and pension contributions. However, the audit's calculations include other delinquent payments by Gianino for the apprentice training fund, betterment fund, political action fund, and Metro B fund, and for local and international union dues. None of these other payments are payable to either the health-and-welfare or pension funds; the CBAs direct such payments to other payees and other funds, none of which is a plaintiff in this suit. The Funds have not alleged that they are owed the other delinquent payments and, therefore, they do not appear to have standing to make claims to these delinquencies.

**25.** Subtracting the non-pension and non-health-and-welfare delinquencies from the audit totals produces a total of $177,650.66 delinquent contributions by Gianino to the Funds.

**26.** The audit added, and the Funds requested, 10% of this total as liquidated damages, or $17,765.07.[10]

---

[10] Although the Complaint prayed for liquidated damages in the amount of 20% of the delinquent contributions, Complaint, Prayer C, and, as noted, the *Assent to Participation Agreement* and each fund's *Agreement and Declaration of Trust* provide for a total of 20% liquidated damages, the audit includes, and the Funds at hearing and in their motion for judgment and proposed findings and conclusions request, only 10%

**27.** Adding the cost of the audit results in a total of $196,940.73 that the Funds are due from Gianino ($177,650.66 delinquent contributions + $17,765.07 liquidated damages + $1,525 audit costs).[11]

**28.** Therefore, this Magistrate Judge recommends that a default judgment be entered in favor of the Funds and against Gianino in the amount of **$196,940.73**.

Within fourteen days after entry of this recommended disposition, the parties may serve and file specific written objections to the recommendation. The District Judge is required to determine *de novo* any part of this Report and Recommendation to which proper objections have been filed. She may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to this Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2) and (3). Failure to timely file objections to an issue waives the right to challenge both the recommended disposition of that issue before the District Judge, *American Acceptance Co., LLC v. Goldberg*, No. 2:08-cv-9

---

liquidated damages.

[11] The Funds did not request in their motion for judgment, at the hearing, or in their proposed findings and conclusions, and they did not present evidence at hearing supporting, an award of pre-judgment interest, attorney's fees, or costs.

JVB, 2008 WL 2074128, *1 (N.D. Ind., May 14, 2008), and the District Judge's adoption of it

on appeal, *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010).

**SO RECOMMENDED.**

Date:  07/27/2012

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution:

Ryan Michael Hurley
FAEGRE BAKER DANIELS, LLP — Indianapolis
ryan.hurley@FaegreBD.com

Donald D. Schwartz
ARNOLD & KADJAN
dschwartz@arnoldandkadjan.com

John Edward Taylor
THE LAW OFFICE OF JOHN TAYLOR, LLC
john.taylor@bakerd.com